IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01765-KAS

THEODORE MAGALETTI,

    Plaintiff,

v.

HOME DEPOT USA, INC.,

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff Theodore Magaletti's oral **Motion to Compel Supplemental Responses to Interrogatory Numbers 8 and 9 and Request for Production Number 5** to the extent Defendant Home Depot USA, Inc., a self-insured entity, has withheld production of its claim file. The Court held a discovery dispute hearing on this and other issues on March 17, 2025. *Courtroom Minutes* [#30]. The court ruled on all issues but took this one under advisement. *See id*. at 1-3. Pursuant to court order, the parties submitted briefing on whether Defendant's withheld claim file is protected work product. *See Def.'s Brief* [#31]; *Pl.'s Response* [#32]. Also pursuant to court order, Defendant electronically submitted its 60-page claim file to the Court for *in camera* review. The Court has reviewed the parties' briefs, the record from the March 17, 2025 hearing, Defendant's submitted claim file, and the applicable law. For the reasons discussed below, Plaintiff's oral Motion to Compel is **granted.**

## I.     Background

This personal injury lawsuit, which is pending in this District on diversity jurisdiction grounds, arises from an incident at a Home Depot store where Plaintiff, a store customer, injured himself while handling flashing metal sheets on July 31, 2023. *See Compl.* [#4] ¶¶ 5-23. Home Depot is self-insured and retained Sedgwick, a third-party administrator, to handle and investigate Plaintiff's claim. *See Def's Brief* [#31] at 1. Soon after the incident occurred, Home Depot began to collect and document information. *See Pl.'s Response* [#32] at 4 (citing *Ex. 4 to Response*, *Home Depot General Liability Worksheet* [#32-4]). Though the incident occurred in July 2023, Plaintiff did not commence litigation in state court until May 7, 2024. *See Compl.* [#4] at 1. During the year between the incident and litigation's commencement, Plaintiff continued to receive medical treatment for his injury and Home Depot continued to investigate and attempted to negotiate and settle his claim. Home Depot's claim notes span from August 1, 2023, to June 15, 2024. The Court must determine whether all, some, or none of the claim notes are attorney work product and, if so, whether any of the claim notes are subject to discovery.

## II.     Legal Standards

The Federal Rules of Civil Procedure permit parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering factors including "the parties' relative access to relevant information" and "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). While a party may not ordinarily "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," *i.e.,* work product-protected materials, "those materials may be

discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Federal Rule of Civil Procedure 37(a)(3)(B), permits a party seeking discovery to move for an order compelling production of information if a party fails to produce documents.

Federal law governs work product privilege issues that arise in federal court, even in diversity cases such as this. *See Frontier Refin., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (referencing Fed. R. Civ. P. 26(b)(3)); *see also Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL 6119962, at *12 (D. Colo. Oct. 15, 2020). To establish work-product protection, Defendant Home Depot bears the burden of establishing that the materials sought to be protected are documents or tangible things that were prepared in anticipation of litigation or for trial. *E.E.O.C. v. Outback Steakhouse of Fla.*, 251 F.R.D. 603, 610 (D. Colo. 2008). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Id*. (quoting *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995)).

To determine whether documents were prepared in anticipation of litigation, courts consider "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D. Colo. 1993) (citing 8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2024); *Ownby*

3

*v. United States*, 293 F. Supp. 989 (W.D. Okla. 1968)); *see also Menapace*, 2020 WL 6119962, at *13.

Two kinds of protected work product exist: (1) fact work product; and (2) opinion work product. *In re Qwest Commc'ns Int'l, Inc. Sec. Litig*, No. 01-cv-01451, 2005 WL 7987529, at *2 (D. Colo. Aug. 15, 2005). "Fact work product" consists of "materials generated by attorneys that are not opinion work product; *e.g.*, witness statements, investigation reports, photographs, diagrams, and charts prepared in anticipation of litigation for trial preparation." *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 626 (N.D. Okla. 2009); *see also Qwest Commc'ns*, 2005 WL 7987529, at *4 (concluding that attorney notes made during an investigative interview, which were made to record and preserve witness statements through direct quotes or paraphrasing—without including attorney's mental or thought processes—constitute fact work product).

Opinion work product includes "memoranda analyzing law or fact, trial strategy, strengths and weaknesses of a case, legal theory, and the application of the law to the facts (but not bare facts or legal theory alone); selections or compilations of documents or data which reveal counsel's thought processes; and attorney notes of witness interviews." *Tyson Foods, Inc.*, 262 F.R.D. at 626.

The "substantial need/undue burden test [in Fed. R. Civ. P. 26(b)(3)(A)] applies . . . to fact work product," and it "encourages attorneys to prepare thoroughly for trial without fear that their thoughts and efforts will be disclosed to an opponent." *Frontier Refin.*, 136 F.3d at 704 n.12. Opinion work product, however, "is subject to enhanced and heightened protection," akin to "absolute protection." *Qwest Commc'ns*, 2005 WL 7987529, at *2; *accord Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (concluding that the

4

"substantial need" and "without undue hardship" test does not apply to opinion work product).

### III.     Analysis

Defendant Home Depot argues that the claim notes "contain significant amounts of opinion work product" in that they contain "notes [that] reflect[] the impressions, opinions, conclusions, and/or legal theories (or addressing elements of legal theories) of the agents and/or employees of the Home Depot legal argument." *Def's Brief* [#31] at 2-3. Home Depot also argues that the claim notes consist of fact work product for which Plaintiff has not established a substantial need. *Id*. at 4-5.

Plaintiff Magaletti argues that "the claim notes are not purely subjective impressions or mental constructs prepared in anticipation of litigation. Rather, they almost certainly include firsthand factual accounts, objective incident documentation, internal responses, and investigatory data from the scene." *Pl's Response* [#32] at 2. Plaintiff further argues that Defendant is "not entitled to blanket privilege" to the extent the claim file contains eyewitness or employee statements, photographs or diagrams of the hazard, "attempts by Defendant to identify the nature and purpose of the cardboard box that caused [Plaintiff's] injury," and records regarding the circumstances surrounding the placement of gloves in the vicinity of the flashing metal sheets. *Id*. at 2-3. Additionally, Plaintiff argues that the claim file's "factual materials are highly relevant and necessary" because they "go directly to notice, mitigation, and fault—core issues in this litigation." *Id*. at 3-4. Plaintiff also argues that the "[c]laim notes function as Home Depot's institutional memory"; without them, "Plaintiff cannot test what Home Depot knew, when it knew it, or

5

how it responded internally." *Id*. at 4. Finally, Plaintiff contends that the claim notes were created in the ordinary course of business. *Id*.

"[A] substantial part of an insurance company's business is to investigate claims made by an insured against the company or by some other party against an insured"; therefore, such investigations are presumed to be "part of the normal business activity of the company and . . . reports and witness[] statements compiled by or on behalf of the insurer in the course of such investigations are [deemed] ordinary business records as distinguished from trial preparation materials." *Hawkins v. Dist. Ct.*, 638 P.2d 1372, 1378 (Colo. 1982) (quoted in *Menapace*, 2020 WL 6119962, at *14). This holds true where an entity is self-insured, like Home Depot. *Cf. Compton v. Safeway, Inc.*, 169 P.3d 135, 137 (Colo. 2007) (discussing same principle in context of self-insured entity because the entity's risk management and loss control department "functioned as a traditional insurance company for purposes of investigating, and ultimately denying, [the plaintiff's] claim"). Of course, circumstances may arise where "an insurance company's investigation of a claim . . . shift[s] from an ordinary business activity to conduct 'in anticipation of litigation,'" but no bright line delineating the shift exists. *Hawkins*, 638 P.2d at 1378 (quoted in *Menapace*, 2020 WL 6119962, at *14). Thus, an "insurance company has the burden of demonstrating that the document that was prepared or obtained in order to defend the specific claim which already had arisen and, when the documents were prepared or obtained, there was a substantial probability of . . . litigation over the claim." *Id*. at 1379 (quoted in *Menapace*, 2020 WL 6119962, at *14).

Just as an insurance company's investigation of a claim may shift from ordinary business activity to conduct in anticipation of litigation, so may an attorney's role shift.

6

Consequently, the work product doctrine does not protect communications from a lawyer to an insurance carrier when the lawyer acts in an investigative capacity rather than as a counselor of the law. *See Menapace*, 2020 WL 6119962, at *5 (discussing *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. App. 1998)); *see also id*. at *10 (noting consistent findings among courts "that, even where an attorney's involvement crosses the line into the role of claims adjuster, communications between the attorney and the insurer involving legal advice regarding the claim are still protected").

Based on the Court's *in camera* review of the claim file, the Court concludes that Plaintiff has the better argument. Defendant has not met its burden of establishing that the entire claim file's contents were prepared in anticipation of litigation or for trial. Soon after Plaintiff was injured in a Home Depot store on July 31, 2023, Home Depot opened a claim file with a specific claim number. *See Ex. 4 to Response*, *Home Depot General Liability Worksheet* [#32-4]. According to the claim file, the matter was sent to a customer resolution administrator the following day, on August 1, 2023. That customer resolution administrator, through Home Depot's third-party administrator, proceeded to investigate and evaluate Plaintiff's claim. The claim notes reveal various investigative steps and assessments and evaluations of Plaintiff's claim. The claim file contains an isolated reference to litigation in September 2023; however, the reference appears to relate to a valuation of the claim and settlement authority in the claims handling context. The claim file contains another oblique reference to litigation in October 2023; however, that reference still appears to relate to continued valuation of the claim and settlement authority in the claims handling context.

The first indication of any litigation prospect appears in an April 17, 2024 entry, where the name and contact information for Plaintiff's litigation counsel is listed. Home Depot has not established that litigation was substantially probable any time before April 2024, when Plaintiff's litigation counsel first appears in the claim file. "Undoubtedly, litigation was a *possibility* [before then]. However, litigation is possible in every insurance claim, and this fact alone is insufficient to justify interfering with the normal and intended function of the discovery rules." *Compton*, 169 P.3d at 137 (emphasis added) (citing *Hawkins*, 638 P.2d at 1378-79). To the extent Home Depot was communicating with Plaintiff's litigation counsel on April 17, 2024, the claim file reveals "only a possibility, not a probability, of litigation" at that time. *Compton*, 169 P.3d at 138. About a week later, on April 25, 2024, the prospect of litigation appears to have increased, based on the nature of communications between Plaintiff's litigation counsel and a claims examiner with Home Depot's third-party administrator. Less than two weeks later, on May 7, 2024, Plaintiff filed suit in state district court. By June 3, 2024, communications from a legal coordinator with Home Depot's Litigation & General Liability group begin to appear in the claim file. Less than two weeks later, Home Depot affirmatively converted the claims handling into litigation mode, and thereupon the claim file ended.

Home Depot cites various claim file entries which purportedly contain opinion work product. *See Def.'s Brief* [#31] at 3 (collecting citations). The Court has reviewed those citations and almost entirely disagrees. A September 7, 2023 note on page 56 of the claim file appears to contain a claim examiner's notations about facts uncovered in her investigation of the claim. Even though the notations include commentary about the jurisdiction in which the incident occurred, a reference to the law on comparative fault,

8

and brief notations on aggravating and mitigating factors, litigation was a mere possibility, not a substantial probability, at that time.

Other entries on September 7, 2023; September 14, 2023; December 5, 2023; and January 5, 2024, consist of the claim examiner's notations regarding facts gathered and claims handling and investigative steps taken, and text that appears to have been lifted from Plaintiff's medical records. On those dates, litigation remained a mere possibility. According to Home Depot, an October 9, 2023[1] entry on page 38 of the claim file "includ[es] action plans and information requests in order to assess liability and assist the legal department and/or Home Depot's defense counsel." *Id*. However, the October 9, 2023 entry does not appear to be a communication directed to anyone; rather, it appears to be the claim examiner's notations regarding her continued evaluation of the claim. On that date, litigation was a mere possibility.

Home Depot also points to a September 19, 2023 entry that "reflects a meeting with Sedgwick and several members of the Home Depot legal department, including Home Depot's corporate counsel (Jonathan White and Philippa Ellis) [and] Tori Hampson (Manager, Casualty Claims for the Legal Department)[.]" *Id*. The Court agrees that entry reflects a meeting with corporate counsel and Sedgwick's claims handling team. However, the additional notations in this line item primarily consist of investigative next steps. The notation does not contain any information that is obviously legal advice or otherwise subject to attorney-client privilege or work product. Defendant's vague assertion that attorney attendees of that meeting "rely and review on [sic] the information,

---

[1] Defendant Home Depot's brief identifies an "10/19/23 note" on page 39 of the claim file, *see* [#31] at 3, but the claim file contains no entry with that date. Therefore, the Court presumes that Defendant intended to reference a "10/**9**/23" entry on page 38.

data, analysis, liability assessments, and settlement evaluations contained in the notes," *id*., falls far short of establishing protection from discovery. Neither the claim note nor Defendant's brief provide any information that attorneys at the September 19, 2023 meeting functioned as legal counselors as opposed to participants in the claims handling and investigation, or that the meeting was held because of the prospect of litigation. Moreover, litigation was a mere possibility in September 2023.

Home Depot also points to several other entries dated September 7, 2023; September 14, 2023; October 9, 2023; December 5, 2023; January 5, 2024[2]; April 17, 2024; June 4, 2024; and June 11, 2024, which supposedly contain "thoughts and comments on litigation and/or settlement strategy, including mentions of suitable reserves." *Id*. However, for the most part, the Court disagrees. As already discussed, litigation was a mere possibility at least until April 2024. All the entries prior to April 2024 focus on claim handling. Therefore, the Court finds that none of those entries are protected by the work product doctrine.

The name of Plaintiff's litigation counsel first appears on the claim file on April 17, 2024. Arguably, then, the prospect of litigation increased to something more than a mere possibility on or around April 17, 2024 and, indeed, litigation commenced on May 7, 2024. Therefore, the Court must consider whether the entries after April 17, 2024, are opinion work product, fact work product, or neither.

The April 17, 2024 entry on page 14 appears to be a claim examiner's evaluation "for liab/comp". The entry neither appears to be directed to anyone nor appears to contain

---

[2] Defendant Home Depot's brief identifies a "1/5/25" note on page 25, *see* [#31] at 3, but the claim file contains no entry with that date. Therefore, the Court presumes that Defendant intended to reference a "1/5/2**4**" entry on page 25.

an attorney's mental impressions. The entry consists of a factual recitation of CCTV footage, the nature of Plaintiff's wound, and Plaintiff's medical treatment. The entry also contains references to Colorado's statute of limitations, comparative fault, mitigating and aggravating factors, and evaluation of reserves. The entry includes the claim examiner's notation to contact Plaintiff's counsel to inquire about Plaintiff's theory of liability. Subsequent entries in April 2024 through May 14, 2024, by the claim examiner concern communications between the claim examiner and Plaintiff's counsel. Additional May entries by the claim examiner and her supervisor contain action plans, status updates, and information gathering that appears to relate to settlement efforts. Again, none of these entries are obviously work product—even though Plaintiff had filed suit in state district court on May 7, 2024—and Home Depot has not met its burden to establish otherwise.

The nature of the entries appears to have shifted on June 2, 2024, however. On that date, a legal coordinator with Home Depot's Litigation and General Liability group sent "high" priority communication to Sedgwick. A June 4, 2024 entry from a claim examiner/adjuster consists of a file review and references the filed complaint. Another June 4, 2024 entry reflects correspondence from that claim examiner/adjuster to Plaintiff's litigation counsel. A June 5, 2024 entry reflects return correspondence from Plaintiff's litigation counsel to the claim examiner/adjuster. Subsequent entries on June 5, 6, and 11 on pages 4, 5, 6, and 7 reflect communications between Sedgwick and Home Depot's in-house counsel regarding how to proceed with litigation. Disclosure of those entries would impermissibly reveal Home Depot's attorneys' strategies and impressions. Therefore, Home Depot has properly withheld those entries from production.

Subsequent entries dated June 11, 12, and 13 on pages 3 and 4 are not work product. The June 11 entry is from Plaintiff's counsel to Sedgwick, and the June 12 and 13 entries appear to concern claim handling. However, the June 13 and 14 entries on pages 1 and 2 contain direction from Home Depot's counsel to Sedgwick regarding the litigation. Disclosure of those entries would impermissibly reveal Home Depot's attorneys' strategies and impressions. Therefore, Home Depot has properly withheld those entries from production.

## IV.    Conclusion

Based on the Court's review of Defendant Home Depot's 60-page claim file, which was submitted for *in camera* review, the Court concludes that most of the withheld entries are not work product. Only the following entries are work product: (1) entries dated June 5, 6, and 11, 2024, on pages 4, 5, 6, and 7; (2) entries dated June 13 and 14, 2024, on pages 1 and 2. Accordingly,

IT IS HEREBY **ORDERED** that Plaintiff's oral Motion to Compel Supplemental Responses to Interrogatory Numbers 8 and 9 and Request for Production Number 5 is **GRANTED**.

IT IS FURTHER **ORDERED** that Defendant shall produce the majority of its claim file to Plaintiff by **August 19, 2025**.

Dated: August 5, 2025                                BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge